**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEVEN TROY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 C 2418 |
| v. ) | |
| ) | Judge Marvin E. Aspen |
| THE RED LANTERN INN, INC. ) | |
| d/b/a BALDUCCI'S and DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER AND OPINION**

In his motion for class certification, Plaintiff Steven Troy ("Troy") alleges that the Defendant Red Lantern Inn, Inc. d/b/a Balducci's ("Balducci's") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, as amended by the Fair and Accurate Transactions Act of 2003 ("FACTA"), Pub. L. 108-159, 117 Stat. 1952 (2003), by unlawfully generating a computer-generated credit card receipt that displayed both Troy's credit card expiration date and the last four digits of his credit card number. Presently before us is Troy's motion for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) and his related request that we appoint Edelman, Combs, Latturner & Goodwin, LLC ("ECLG") as class counsel. For the reasons set forth below, we grant Troy's motion.

**BACKGROUND**

The FCRA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15

U.S.C. § 1681c(g)(1). This provision went into effect on December 4, 2006 for all credit card receipt printers that were in use before January 1, 2005. *Id.* § 1681c(g)(3). The meaning of the statute is clear: "Printing either more than five digits of the credit card number or the expiration date of the credit card violates Section 1681c(g)." *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 786 (N.D. Ill. 2007). Any person who willfully fails to comply with this section with respect to any consumer is liable for "any actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

On approximately April 18, 2007, after the statutory deadline to comply with § 1681c(g)(1), Troy alleges that he visited Balducci's and received a computer-generated receipt which displayed Troy's credit card expiration date and the last four digits of his credit card number. Troy is seeking class certification for:

> all persons to whom The Red Lantern Inn, Inc. provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in [Illinois] after December 4, 2006, which displays either (a) more than the last five digits of the person's credit card or debit card number, or (b) the expiration date of the person's credit or debit card, or (c) both.

(Pl's Mot. at 1). Balducci's claims to have reset its machines to be compliant with FACTA on May 11, 2007. (Def.'s Resp. at 2; Def. Ex. D).

## ANALYSIS

Pursuant to Rule 23(a), a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable," (numerosity); "(2) there are questions of law or fact common to the class," (commonality); "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class," (typicality); and "(4) the representative parties will fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23(a). If

2

the numerosity, commonality, typicality, and adequacy requirements are satisfied, the plaintiff must also demonstrate that the proposed class qualifies under at least one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 391 (N.D. Ill. 2006). Troy bears the burden of showing that the proposed class meets the requirements for certification. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993); *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 410 (N.D. Ill. 2006). In evaluating a motion for class certification, we do not examine the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53 (1974). Even though Balducci's does not refute every element Troy must prove for class certification, we must independently validate that all the elements have been met. *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 395 (N.D. Ill. 2006) (hereinafter "*E\*Trade*") (citing *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003). We retain broad discretion in determining whether class certification is appropriate given the particular facts of the case. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998); *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 298 (N.D. Ill. 2005) (hereinafter "*New Cingular*").

### A. Rule 23(a) Requirements

*1. Numerosity*

Rule 23(a)(1) provides that class treatment is warranted where the potential class "is so numerous that joinder of all members impracticable." Fed. R. Civ. P. 23(a)(1). Given that Balducci's has estimated the potential class size to be approximately 5,000 (Def.'s Resp. at 2; Def. Ex. C.), we find this number sufficient to conclude that joinder is impracticable. *See, e.g., McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright

3

line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1).").

### 2. *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[A] proposed class meets the commonality requirement when the member's claims share a common nucleus of operative fact." *E\*Trade*, 240 F.R.D. at 396. Troy argues that the common nucleus between him and the other class members is the issuance of a credit card receipt bearing the prohibited material under Section 1681c(g)(1). Because these issues are the same across the class, we find that Troy's claims meet the commonality requirement.

### 3. *Typicality*

Before certifying a class, we must determine that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The Seventh Circuit instructs that the plaintiff's claim is "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* (internal quotation omitted). Balducci's has not presented any argument suggesting that Troy's claim is not typical of those of the class. Like the other members of the proposed class, he allegedly received a credit card receipt from Balducci's that was in violation of Section 1681c(g)(1) because it contained his credit card expiration date. As a result, we find that Troy's claim meets the typicality requirement.

4

*4. Adequacy*

Pursuant to Rule 23(a)(4), class certification is appropriate only if "the representative parties will fairly and adequately protect the interests of the class." "The plaintiff must show three factors to prove adequacy: (1) [he or she] does not have conflicting or antagonistic interests compared to the class as a whole; (2) [he or she] is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent, qualified and able to conduct the litigation vigorously." *Cavin*, 236 F.R.D. at 392-93; *see also New Cingular*, 232 F.R.D. at 299.

Balducci's claims that Troy is an unsuitable representative of the class because he has filed numerous other FACTA claims, making him a "professional plaintiff." (Def.'s Resp. at 8). However, Troy's repeated litigation actually makes him a better class representative. *See E*Trade*, 240 F.R.D. at 400 (citing *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (hereinafter "*GMAC*") ("Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions."). Furthermore, Troy's decision to bring suit against all merchants who have harmed him in violating FACTA does not injure any of the other class members. *See GMAC*, 434 F.3d at 954. As a result, we find that Troy meets the adequacy requirement under Rule 23(a).

Balducci's also argues that Troy's counsel is inappropriate because they are litigating many other FACTA claims. Because experience of class counsel is an important consideration in favor of determining appropriateness, *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317-19 (N.D. Ill. 1995), counsels' prior and ongoing litigation is no detriment and is actually supportive of their appointment as class representative.

5

## B. Rule 23(b)(3) Requirements

Troy seeks certification under Rule 23(b)(3), which permits class actions where "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In order to grant class certification under Rule 23(b)(3), we must find that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ["superiority"]. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). The predominance and superiority requirements are described in more detail below.

### 1. Predominance

Although related to Rule 23(a)'s commonality requirement, "the predominance inquiry is far more demanding." *New Cingular*, 232 F.R.D. at 301 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S. Ct. 2231, 2250 (1997). To satisfy this aspect of Rule 23(b)(3), "the plaintiff must show that common issues not only exist but outweigh the individual questions. The common questions must be central to all claims." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529-30 (N.D. Ill. 1998).

Balducci's argues that class certification should be denied under criteria (A) and (D) of Rule 23(b)(3) because some plaintiffs may show a preference for pursuing their claims

individually, and these individual claims can be pursued with no financial risk. These arguments, however, are without merit. Balducci's does not offer any reason why the claimants would want to sue individually. Moreover, even if class certification is granted, individual claimants remain free to opt out of the class. Of course, if some individual claimants select this option, it does not mean the benefits of class certification will not be realized for the other, more common, claimants. *Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 616 (N.D. Ill. 2007). "Only when all or almost all of the claims are likely to be large enough to justify individual litigation is it wise to reject class treatment altogether. *GMAC*, 434 F.3d at 953 (citing *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995)). As a result, Troy has sufficiently proven the predominance requirement.

## 2. *Superiority*

Rule 23(b)(3) also requires a plaintiff to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." "Class treatment is especially appropriate for consumer claims" because, as here, such actions often involve common factual and legal questions. *New Cingular*, 232 F.R.D. at 303; *Cavin*, 236 F.R.D. at 395-96. Moreover, a class action is warranted "where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *New Cingular*, 232 F.R.D. at 303 (internal quotations omitted). Balducci's argues that class certification is an inferior method of handling this controversy for four reasons: (I) certification creates the potential for attorney abuse of class action; (ii) potential damages in the class action would be so enormous as to violate Balducci's due process rights; (iii) the compliance efforts already undertaken by Balducci's reduces the benefits of class treatment; and (iv) individual

7

actions provide the superior alternative.[1]  We address each of these arguments in turn.

### i. Attorney Abuse

Balducci's argues that granting class certification in this case raises the likelihood of attorney abuse because certification here would encourage using Rule 23(b)(3) as a means to solicit litigation.  (Def. Resp. at 13).  Class certification is often granted in FACTA and FCRA cases.  Furthermore, no apparent abuse has occurred in this case.  Assuming arguendo that Troy's claims are true, Balducci's was not coerced or tricked into violating the statute, and Troy did not manipulate the situation for the 5,000 other consumers who also allegedly received illegal credit card receipts.  Therefore, absent any indication of foul play by Troy or his attorneys, we cannot conclude that there was any attorney abuse in this case.

### ii. Damages and Due Process

If Troy is ultimately successful in representing a class of 5,000 people, statutory damages in this case could range between $500,000 and $5,000,000.  Balducci's argues that this amount would violate its substantive due process rights, especially since the nature of the offense is a "mere technicality."  (Def.'s Resp. at 13).  While excessive damages violate a defendant's due process rights, *see State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), such considerations should be "applied after a class has been certified." *GMAC*, 434 F.3d at 954. "Reducing an unnecessarily large statutory damage award is a more palatable option than allowing defendants to commit substantive violations of the law and escape liability essentially because they have violated the rights of too many individuals." *New Cingular*, 232 F.R.D. at

---

[1]  In support of these arguments, Balducci's references a number of opinions from the Central District of California.  These cases have no precedential weight in this district, and we are bound by the Seventh Circuit's decision in *GMAC*, which differs from the reasoning underlying the decisions in the cases Balducci's references.  *See GMAC*, 434 F.3d at 953–55.

304. By allegedly printing credit card expiration dates for over four months, Balducci's repeatedly and directly violated Section 1681c(g)—hardly a "mere technicality" to be glossed over. In accordance with Seventh Circuit precedent, we will not deny class certification on this basis. *See GMAC*, 434 F.3d at 953-54.

### *iii. Individual Actions v. Class Action*

Finally, Balducci's argues that any violations of Section 1681 it may have committed are best pursued individually rather than as a class. We disagree. The large potential class size and the relatively small damage awards in each case render class certification the more efficient approach. Potential class members will be spared the trouble of finding their own counsel and filing their own individual claims for relatively small statutory amounts. Furthermore, class certification will decrease the number of suits filed for essentially the same issue, thus saving us—and Balducci's—the time and expense of separately adjudicating potentially 5,000 claims when one class action will suffice. *See E*Trade*, 240 F.R.D. at 400 (citing *GMAC Mortgage*, 434 F.3d at 953) (stating in a similar FCRA suit that "Rule 23(b)(3) was designed for situations such as this").

### C. Class Counsel

As a final matter, Troy asks that we appoint ECLG as class counsel. When appointing class counsel we must consider: "counsel's experience in handling class actions . . . and claims asserted in the action; counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(C)(I). ECLG has pursued numerous class action suits similar to Troy's dealing with FCRA and the recent enforcement of FACTA. Counsel, like ECLG, who regularly pursue similar claims are more likely to appropriately serve

the class and bring more expertise than their less-experienced counterparts. *See, e.g., E\*Trade*, 240 F.R.D. at 397. Accordingly, we grant Troy's motion and appoint ECLG as class counsel pursuant to Rule 23(g)(1)(A).

## CONCLUSION

For the above stated reasons, we grant Troy's motion for class certification and appoint ECLG as class counsel.

It is so ordered.

                                          MARVIN E. ASPEN
                                          United States District Judge

Date: December 4, 2007